## KINNEY v HARTSHORN

Ohio Appeals, 7th Dist, Monroe Co

No 292. Decided May 5, 1937

Moore, Moore & Moore, Woodsfield, and Charles W. Lynch, Woodsfield, for plaintiff.

Matz & Matz, Woodsfield. and T. J. Kremer, Woodsfield, for defendant.

## OPINION

By ROBERTS, J.

This is a bastardy case or so-called, in which the appellant, who hereinafter will be alluded to as plaintiff, charges that the defendant, appellee, who hereinafter will be designated as the defendant, is the father of her bastard child.

The action had its initiative in the Justice Court of R. E. Franklin, Justice of the Peace in and for Center Township, Monroe County, Ohio, before which Justice the plaintiff made the statutory complaint against the defendant, and being questioned by the Justice of the Peace as provided by law, said that her name was Lucile Kinney; that she resided in the township of Washington, County of Monroe, and State of Ohio; that she was an unmarried woman; that she had been delivered of a bastard child, and that the father of her said child was Bert Hartshorn, the defendant; that the child was born in Washington Township, Monroe County; and that she was delivered of said child on the 19th day of May, 1935, and that she was delivered of said child before Dr. J. F. Smyth. Then followed the cross examination by counsel for the alleged father, which is not necessary now to comment upon.

This action was afterwards certified to the Common Pleas Court, where it came on for trial on May 27th, 1936, before Hon. J. G. Devaul, Judge, and a jury duly im-

paneled to decide the issue as to whether the defendant was the father of said child.

At the conclusion of the introduction of testimony and argument of counsel, the cause was submitted to the jury by the judge of said court, subsequently a written verdict was returned by the jury, finding the said defendant "not guilty" as charged in the complaint. Said verdict which was in writing, was subscribed by nine of the jurors.

Thereupon the following took place as dictated and journalized by the presiding judge:

"The jury returned to the court room, and on being inquired of by the court whether they had reached a verdict, the statement was made by their foreman, that they had reached a verdict.

"Thereupon, the court instructed the clerk to call the names of the jurors, and as their names were called, that they were to answer whether they were present. And the clerk did inquire of the jury by calling the name of each, and all jurors answered "present". Thereupon, the verdict was handed to the clerk, who was instructed by the court, to read the verdict. After the verdict had been read, the court said that the called jurors are discharged, but that the regular jurors are excused, subject to the further call of the court.

"The court desires to thank the jury on behalf of Monroe County for their services, you have been very patient in listening to the evidence and are deserving of the commendation of the people for your services. It is very late, and the jurors from the country will require an extra day to reach their home, but there are only 4 or 5 jurors from Woodsfield, and the court desires to make no distinction between the jurors as to pay, and each of them will receive pay for an extra day.

"Thereupon, counsel for the plaintiff, asked that the jury be polled, and this was objected to by counsel for the defendant, for the reason, that the request was made too late.

"Thereupon, the court instructed the clerk to call the names of the jurors, and as their names were called, they were instructed to answer whether or not the verdict which they had returned was their verdict. Objection to this was made by counsel for the defendant. Thereupon, the court told the clerk just ask the jury whether the verdict which they had returned was the verdict of three-fourths of their number, and the clerk did inquire of the jury,

whether the verdict that they had returned, was the verdict of three-fourths of their number, to which the jury answered in the affirmative in unison.

"The court stated, that the request to poll the jury was not made before the court discharged the called jurors, and the court felt that it would be error at this time to have the jury polled, but that the court would have been very glad to have had the jury polled, had the request been made before the called jurors were discharged. Exceptions by plaintiff.

"The court then inquired of the clerk, whether the vouchers for the jurors' pay were made out, and the clerk replied 'just about', and thereupon, the court instructed the jury to remain in their jury box, until the clerk had completed filling out the vouchers, and the jury remained in the jury box until the clerk finished filling out the jurors' vouchers and distributed them among them."

The plaintiff, appellant, claims that reversible error occurred in the trial of the case with reception of the verdict returned by the jury, and the refusal of the court to then poll the jury as demanded by counsel for appellant.

An error proceeding, which in fact is an appeal on law, was perfected in this court upon the same ground, and for other alleged errors not necessary at this time to enumerate.

The complaint of the plaintiff, appellant, in this case, is No. 7, so-called in the petition in error, which reads as follows:

"Said court erred in refusing to grant plaintiff in error a poll of the jury, as requested by plaintiff in error."

Sec 11420-9 GC reads as follows:
"Verdict, when and how rendered.
"In all civil actions a jury shall render a verdict upon the concurrence of three-fourths or more of their number. The verdict shall be in writing and signed by each of such jurors concurring therein and they must then be conducted into court, where their names shall be called by the clerk and the verdict handed to the clerk by the foreman. The clerk must then read the verdict to the jury and make inquiry if it is the verdict of three-fourths or more of their number."

Then §11420-10 GC reads as follows:
"Poll of jury; further deliberation.
"Either party may require the jury to

be polled, which shall be done by the clerk of the court, asking each juror if it is his verdict. If on polling the jury more than one-fourth of the jury answer in the negative, or if the verdict in substance is defective, the jury must be sent out again for further deliberation."

The statement of the court hereinbefore quoted and commencing on page 196 of the bill of exceptions, seems to have followed the mandatory requirements of §11420-9 GC down to and including "the clerk must then read the verdict to the jury."

It appears from the statement of the court, as to what took place, that after the verdict had been read, the court said that the called jurors are discharged, but that the regular jurors are excused subject to the further call of the court.

The last sentence of said section will be re-read as follows:

"The clerk must then read the verdict to the jury, and make inquiry if it is the verdict of three-fourths or more of their number."

It does not appear from the record of proceedings found on pages 195 and 196, that any inquiry was made if it was the verdict of three-fourths or more of their number.

This is a positive and mandatory requirement by the provisions of said section.

The next paragraph appearing on page 195 of the bill of exceptions will be repeated as follows:

"The court desires to thank the jury on behalf of Monroe County, for their services, you have been very patient in listening to the evidence and are deserving of the commendation of the people for your services. It is very late, and the jurors from the country will require an extra day to reach their home, but there are only 4 or 5 jurors from Woodsfield, and the court desires to make no distinction between the jurors as to pay, and each of them will receive pay for an extra day."

It is very apparent that up to this point, nothing in the way of discharging the jury had taken place, and the jury was still subject to the control and direction of the court. The record then proceeds as follows:

"Thereupon the counsel for the plaintiff ask that the jury be polled, and this was objected to by counsel for the defendant, for the reason, that the request was made too late."

It then proceeds—
"Thereupon, the court instructed the clerk to call the names of the jurors, and as their names were called, they were instructed to answer whether or not the verdict which they had returned was their verdict. Objection to this was made by counsel for the defendant. Thereupon, the court told the clerk just ask the jury whether the verdict which they had returned, was the verdict of three-fourths of their number, and the clerk did inquire of the jury, whether the verdict that they had returned, was the verdict of three-fourths of their number, to which the jury answered in the affirmative in unison."

It thereby appears that the inquiry was made of the panel in unison, while §11420-10 GC requires the asking of each juror if it is his verdict. This was not done, and in the opinion of the court, this requirement was also mandatory.

Quoting again from page 196 of the record—

"The court stated, that the request to poll the jury was not made before the court discharged the called jurors, and the court felt that it would be error at this time to have the jury polled, but that the court would have been very glad to have had the jury polled, had the request been made before the called jurors were dischargde. Exceptions by plaintiff."

As a matter of fact, in the opinion of this court, the jury have not been discharged, but the members thereof were still serving as such jurors, subject to the proper orders and directions of the court. They had not been formerly excused, neither had they left the jury box. While no such formula is specifically required, it is the common practice so far as this court knows, universal practice, for the trial court to say in excusing the jury, "Ladies and Gentlemen of the jury you are now excused from further service in this case" or language of similar import.

Then follows one more paragraph on page 196 which seems to indicate, that the pay vouchers for the jury's pay had not been made out, and they were awaiting the

receipt of their vouchers before leaving.

There was no necessity or any reason, if they had been excused, for the jury to remain sitting in the jury box, until they got their vouchers, they could just as well have left the jury box, gone to the clerk's office and got their vouchers when they were made out and ready for delivery to them.

This court finds that prejudicial and reversible error occurred in the refusal of the court to poll the jury as requested and there was no legal or recognizable reason for not so doing.

This is not a technical matter, but a plain, positive-mandatory direction. It is what shall take place in the reception of a verdict, and the duty to poll the jury, when requested, as herein.

The second alleged error is "That the court erred in sustaining the motion of defendant in error, to strike from the files in this case, the affidavits of O. C. Starr and Charles Ebert, which were filed in support of motion for new trial."

And the third error "That the court erred in sustaining the motion of the defendant in error to strike from the files of this case, the affidavits of Clarence R. Crawford and James Craig, which were filed in support of motion for a new trial."

It is not necessary to go into detail regarding the nature of this complaint.

The affidavits of the first two affiants, who were jurors, were sought to be used for the purpose of showing a statement made by a member of the jury, to the effect, that he had heard one James Craig, say, that he had had improper relations with the plaintiff in this case, this was claimed to be prejudicial. The testimony of the other two affiants was to the effect, that no such statement was made.

The burden of proving this, was not maintained by the plaintiff, if such evidence were competent. It is a well established rule, that a juror may not stultify his conduct as such, by disclosing in court testimony of improper conduct among jurors when in retirement in the jury room, unless it is first made competent by other outside testimony tending to prove the misconduct complained of.

All that was offered in this case was the testimony of the jurors, and the necessary evidence aliunde was entirely absent.

There was no reversible error in this matter.

Inasmuch as this case must be reversed, it is not deemed necessary to consider other errors alleged.

This court has no knowledge as to what the evidence may be or how much it may vary if any, in another trial from the trial considered, and the court deems it desirable not to express an opinion so far as the weight of the evidence is concerned.

For the reasons given, however, the judgment of the Court of Common Pleas is reversed, and the cause remanded.

NICHOLS and CARTER, JJ, concur.